UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO


VIANCA A. ARROYO PLANAS,
her husband, VICTOR L. ROSARIO,
and their Conjugal Partnership,
            Plaintiffs,


        v.                                C.A. No. 14-1468-MML


HON. ENRIQUE LAMOUTTE, Chief Judge,
U.S. Bankruptcy Court for the District of
Puerto Rico, and;
MARIA DE LOS ANGELES GONZALEZ, Clerk
of the Court, personally, and;
WILMA JAIME, Chief Deputy Clerk of the
Court, personally, and;
YOLANDA BENITEZ, Human Resources/
Training Specialist with the Office of the
Clerk of the Court, personally and;
SIX UNKNOWN DEFENDANTS, personally,
                Defendants.



MEMORANDUM AND ORDER

The primary plaintiff in this employment-related action,

Vianca A. Arroyo-Planas ("Arroyo-Planas," together with her husband

Victor L., Rosario ("Rosario"), the "Plaintiffs"), seeks damages as

well as declaratory and equitable relief for the alleged wrongful

termination of her employment at the Office of the Clerk of the

United States Bankruptcy Court for the District of Puerto Rico (the

"Bankruptcy Court").[1] The defendants in the case (the "Defendants") include one of the judges of the Bankruptcy Court where Arroyo-Planas had been employed for nearly sixteen years, the Clerk of the Court, the Chief Deputy Clerk, the Human Resources Specialist, and six "unknown defendants."

The matter is before the Court on the Defendants' motion to dismiss Arroyo-Planas's complaint (the "Complaint") for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## I.   Factual and Procedural Summary

Arroyo-Planas began working at the Bankruptcy Court as a full-time Notice Clerk (Grade CL-21) on September 1, 1997. Complaint ¶13 (Dkt. No.1). By November 30, 2006, Arroyo-Planas was working as a Court Services Clerk (Grade CL-25), a position she still held on the day of her termination. Complaint ¶14. On July 2, 2013, Arroyo-Planas was informed by Chief Deputy Clerk Wilma Jaime and Clerk of the Court Maria de los Angeles Gonzalez that her employment was terminated as of July 5, 2013. Arroyo-Planas was also given a letter, which stated that her Grade CL-25 position was being abolished as "a direct result of a reduction in force due to

---

[1]

The case was assigned to this Court after two of the district court judges of the United States District Court for the District of Puerto Rico recused themselves from the case. Letter with Designations (Dkt. No. 6).

budgetary constraints." Complaint ¶¶16-21. Upon inquiry, Arroyo-Planas learned that the Grade CL-25 position of a younger male co-worker was also being terminated, but that the termination of his employment was not effective until September 30, 2013. Complaint ¶22.

According to the Complaint, Arroyo-Planas asked about the reason for the different termination dates and was told that, because she would be eligible to receive retirement benefits on July 15, 2013, her fifty-sixth birthday, the Defendants had acted "expeditiously" to terminate her employment before that date. Complaint ¶23. It should be noted at this point that, although it is correctly stated that Arroyo-Planas became eligible for retirement annuity payments on July 15, 2013, termination of her employment just prior to that date did not affect her eligibility for that benefit. However, the timing of the termination just prior to the eligibility date allowed Arroyo-Planas to collect a year's salary as severance pay, which would not have been available to her, had her employment continued beyond her retirement eligibility date.

On July 9, 2013, Arroyo-Planas sent a letter to the Clerk of Court as an "informal request" to reconsider the termination of her employment. Complaint ¶36. Arroyo-Planas requested to be reinstated to any lower grade position being held by a person with less seniority or, in the alternative, postponement of her employment

3

termination until September 30, 2013. Complaint ¶ 37. According to the Complaint, following the termination of her employment, Arroyo-Planas received a letter from the Administrative Office of the United States Courts, informing her that, pursuant to 5 U.S.C. §5595[2], she qualified for severance pay because her separation from employment was involuntary. Complaint ¶41. According to the Defendants' Answer (Dkt. No. 17), between July 19, 2013 and July 4, 2014, Arroyo-Planas received severance payments totaling $54,183. Answer at ¶6.

On October 4, 2013, after Arroyo-Planas had asked Human Resources Specialist Yolanda Benitez ("Benitez") how she could appeal the termination of her employment, Benitez informed Arroyo-Planas that the Bankruptcy Court did not have a procedure to appeal her termination. Complaint ¶¶43-44. Arroyo-Planas and her husband were also informed that employment by judicial appointment was "at will," and that employees of the federal judiciary service were not covered by the legal provisions of the competitive service. Complaint ¶44. Arroyo-Planas further alleges that she requested, but was not provided with, a copy of the personnel manual. Complaint ¶¶43, 45. According to the Complaint, at some point following her separation, Arroyo-Planas withdrew her retirement

---

[2]
    As set forth in 5 U.S.C. §5595, the severance pay is computed based on the length of service and enhanced by an allowance "for each year by which the age of the recipient exceeds 40 years at the time of separation." 5 U.S.C. §5595(c).

contributions to meet her financial commitments. Complaint ¶ 102.[3]

On June 12, 2014, Arroyo-Planas filed a four-count complaint in the United States District Court for the District of Puerto Rico, asserting claims of deprivation of procedural due process (Count I) and substantive due process (Count II), and violation of the Equal Protection Clause (Count III). In addition, Arroyo-Planas seeks declaratory and equitable relief (Count IV), as well as pecuniary and punitive damages.

Arroyo-Planas contends that she had a protected liberty interest in her continued employment and that she was deprived of her constitutional right to effective notice and pre- and post-deprivation hearings prior to the termination. Complaint ¶¶58-62. Arroyo-Planas also alleges that her male colleague was treated more favorably and that the termination of her employment was intended to impede her qualifications for retirement benefits and resulted in the deprivation of her substantive due process rights. Complaint ¶¶71, 76. According to Arroyo-Planas, she was the subject of intentional discrimination "by unequal treatment due to her gender and her age." Complaint ¶ 82. Arroyo-Planas suggests that the asserted reason for the termination—budgetary constraints resulting

---

[3]
Although it is never explicitly stated in Arroyo-Planas's pleadings, it appears that the withdrawal of her retirement contributions effectively rendered her ineligible for retirement benefits, which would have consisted of life-long annuity payments computed on her sixteen years of federal service. Answer at 63, 75, 87, 98.

5

in the abolishment of her position—was belied by (1) more favorable treatment of her male colleague (to the extent that his employment continued until September 2013); and (2) the conversion of two temporary positions to permanent positions and/or the extension of promotions to other employees, accompanied by pay raises. Complaint ¶83.  In her request for relief, Arroyo-Planas seeks a declaration that, *inter alia*, she had the expectation of continued employment, a "real, tangible and protectable interest regarding her Retirement Benefits," and that she is entitled to a reinstatement to her position and/or the accumulation of the time needed to qualify for Retirement Benefits and/or the replenishment of her retirement contributions. Complaint ¶¶96-98, 103.

On October 2, 2014, following designation of this Court to preside over the case, the Defendants filed an answer (Dkt. No. 17) to the Complaint, asserting, *inter alia*, that the Court lacks jurisdiction over Arroyo-Planas's claims because "[j]udiciary employees have no property interest in their employment and thus no due process protection under the Constitution." Answer ¶1.

On December 7, 2014, following a November 5, 2014 telephonic Rule 16 scheduling conference, the Defendants filed a motion to dismiss the Complaint (Dkt. No. 21), to which the Plaintiffs filed a response in opposition (Dkt. No. 27). The Defendants elected not to file a reply thereto. The parties have engaged in settlement discussions, which ultimately were unsuccessful.

## II. Standard of Review

### A.   Motion to Dismiss

The dismissal of a complaint is governed by Rule 12 of the Federal Rules of Civil Procedure. The Court may dismiss a complaint *inter alia*, for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), or for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). The standard of review under Fed. R. Civ. P. 12(b)(1) "is similar to that accorded a dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) *cert. denied*, 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995)(citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

It is well established that, "when a defendant moves to dismiss for lack of federal subject matter jurisdiction, 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007)(quoting Murphy v. United States, 45 F.3d at 522). In determining a motion to dismiss a case for lack of subject matter jurisdiction, the Court "give[s] weight to the well-pleaded factual averments in the operative pleading (here, the petitioners' amended complaint) and indulge[s] every reasonable inference in the pleader's favor." Aguilar v. United States Immigration and Customs Enforcement Div. of Dept. of Homeland

7

Security, 510 F.3d. 1, 8 (1st Cir. 2007); Muñiz–Rivera v. United States, 326 F.3d 8, 11 (1st Cir.2003).  Accordingly, the Court must "construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in favor of the plaintiff."  Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir.1996). However, a "plaintiff cannot rest a jurisdictional basis merely on 'unsupported conclusions or interpretations of law." Johansen v. United States, 506 F.3d at 68 (quoting Murphy, 45 F.3d at 522 (quoting Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir.1993)).

Similarly, in deciding a motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts "all well-pleaded facts as true and draw[s] all reasonable inferences" in favor of the party objecting to the dismissal. Carreiro v. Rhodes Gill and Co., Ltd., 68 F.3d 1443, 1446 (1st Cir. 1995)(citing Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir.1993)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)(noting that the court is "not bound to accept as true a legal conclusion couched as a factual allegation")(internal citation and quotation marks omitted).

## III. The Parties' Positions

### A. Defendants' Motion to Dismiss

The Defendants take the position that this Court lacks jurisdiction over Arroyo-Planas's claims because, as a judicial employee included in the "excepted service" category of the Civil Service Reform Act of 1978 ("CSRA") Pub.L. 95-454, 92 Stat. 111, she was an "at will" employee subject to removal by the Clerk of the Bankruptcy Court. Accordingly, the Defendants argue that Arroyo-Planas had no property interest in her continued employment and that she was precluded from challenging the termination of her employment for alleged due process violations or from bringing a damages claim under Bivens[4].

With respect to Arroyo-Planas's claims of violation of the Equal Protection Clause, the Defendants point out that, notwithstanding the termination of her employment shortly before her fifty-sixth birthday, Arroyo-Planas became eligible for retirement benefits as soon as she reached the minimum retirement age ("MRA") of fifty-six, because she had worked as a federal employee for more than ten years. The Defendants note, however, that the termination of Arroyo-Planas's employment on or after her fifty-sixth birthday would have rendered her ineligible to receive the severance payment. Arroyo-Planas's younger male colleague,

---

[4]

Webster Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971).

whose employment was terminated at the same time, but which termination did not take effect until September 2013, was not subject to the same consideration since he had not reached his MRA yet.

**B.   Plaintiffs' Objection**

In the Complaint, Arroyo-Planas alleges, without further context or elucidation, that "[t]he Civil Service Reform Act is not applicable to the employees of the Judicial Branch," Complaint ¶46, an allegation to which the Defendants take no exception in their answer. Answer ¶46. From that basis, the Plaintiffs argue that because "the CSRA is inapplicable to federal judicial employees [] and Defendants have failed to identify the statute that would deny plaintiffs a 'judicial forum for a colorable constitutional claim,' there is no impediment for the exercise of the district court's jurisdiction on the constitutional causes of action, 28 U.S.C. 3331." Pltfs' Obj. at 11-12.

Arroyo-Planas rejects the Defendants' contention that she was an "at will" employee, arguing that the "special circumstances of [her] employment, where she was a permanent tenured employee and who subjectively and objectively believed that she had a right to continued employment," are sufficient to establish that she had "a property interest that is protectable under the Constitution." Pltfs' Obj. at 12, 16.

Finally, regarding her equal protection claim, Arroyo

maintains that terminating her employment just before her fifty-sixth birthday, while allowing her younger male colleague (whose position was abolished at the same time) to work until September 30, 2013, constituted unequal treatment due to her age. Pltfs.' Obj. 17-18. Arroyo-Planas's support for that allegation is limited to suggesting that termination of her employment just before her fifty-sixth birthday was designed to deprive her of her retirement benefits.

## IV.   Discussion

### A.   The Due Process Claims

At the outset, the Court notes that, contrary to Arroyo-Planas's contention in the Complaint, the Civil Service Reform Act ("CSRA") is "applicable" to judicial employees. The CSRA defines certain categories for all federal employees and it sets forth the various remedies available to federal employees against prohibited personnel practices. The CSRA does not, however, afford judicial employees, who belong to the "excepted service" category, the same opportunities to challenge adverse personnel actions that it provides to other categories of federal employees. Specifically, the CSRA does not provide for administrative or judicial review of personnel actions taken against members of the "excepted service" category, to which Arroyo-Planas belongs.

The CSRA provides a comprehensive remedial scheme through which federal employees may challenge "prohibited personnel

practices." 5 U.S.C. §§ 2302, 7512-13, 7701. The purpose of the CRSA's integrated scheme of "administrative and judicial review" for adverse employment action is to "balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." <u>United States v. Fausto</u>, 484 U.S. 439, 445, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). To that end, the CSRA "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." <u>United States v. Fausto</u>, 484 U.S. at 443, 108 S. Ct. at 671.

However, the "detailed protections and remedies afforded federal civil servants by the CSRA do not apply uniformly to all covered employees." <u>Dotson v. Griesa</u>, 398 F.3d 156, 163 (2d. Cir. 2005). The CSRA distinguishes between employees in (1) the senior executive service, 5 U.S.C. §3132(a)(2); (2) the competitive service, 5 U.S.C. §2102(a)(2); and (3) the excepted service. 5 U.S.C. §2103(a). Judicial employees like Arroyo-Planas are categorized as excepted service personnel because they are not included in either the senior executive or the competitive service. <u>See</u> 5 U.S.C. §§ 7511 (a), 7511(b). The CRSA also allows for the preferential treatment of employees in the three categories if they are veterans or close relatives of veterans. 5 U.S.C. § 2108. There has been no assertion that Arroyo-Planas belongs to a preference-eligible category; for purposes of the CSRA, she is categorized as

a non-preference excepted service employee.

Chapters 43, 23, and 75 of the CSRA govern personnel action against members of the civil service. <u>Fausto</u>, 484 at 445. It is well established law that neither Chapter 75 nor either of the other two chapters gives non-preference members of the excepted service the right to judicial review for adverse personnel actions. <u>Fausto</u>, 484 U.S. at 445-447 108 S.Ct. 668. In <u>Fausto</u>, the Supreme Court of the United States, upon reviewing the efforts of a non-preference excepted service employee to seek review of his suspension, determined that the "deliberate exclusion of employees in respondent's service category from the [CSRA] provision establishing administrative and judicial review for personnel action" of which he complained, precluded him from "seeking review in the Claims Court under the Back Pay Act." <u>Fausto</u>, 484 U.S. at 454, 108 S.Ct. 668. The Supreme Court concluded that "[t]he comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter." <u>United States v. Fausto</u>, 484 U.S. at 448, 108 S. Ct.at 674); <u>see also</u> <u>Elgin v. Dept't of Treasury</u>, ----U.S.----, 132 S.Ct. 2126, 2133, 183 L.Ed.2d 1

13

(2012)(holding that the CSRA, which provides exclusive avenue to judicial review for federal employees, "entirely foreclose[s] judicial review to employees to whom the CSRA *denies* statutory review.")

In other words, if the CSRA does not afford judicial review procedures to non-preference excepted service employee for adverse personnel actions, no judicial review is available to them at all. Elgin, 132 S.Ct. at 2133. See, e.g. Paige v. Cisneros, 91 F.3d 40, (7th Cir. 1996)(noting that "by creating a comprehensive review system the CSRA implicitly repealed the jurisdiction of federal district courts over personnel actions...even if the action is against a member of the excepted service who has no right to a [review under the CSRA]." Id. As a result, many personnel actions are unreviewable in any court or administrative tribunal. Id. (citing Fausto, 484 U.S. 439).

The First Circuit has recognized that an excepted service employee is not covered by the same protective measures set forth in the CSRA that are available to senior executive and competitive service employees. See e.g. Berrios v. Department of Army, 884 F.2d 28, 30 (1st Cir. 1989) (concluding that because "the CSRA preempts challenges to personnel actions brought under federal law" the CSRA preempted "plaintiff's entire district court action," including constitutional claims against the defendants); see also Pathak v. Department of Veterans Affairs, 274 F.3d 28 (1st Cir. 2001). The

14

plaintiff in Pathak, an excepted Service employee, brought an action under the Administrative Procedures Act ("APA") against the Department of Veterans Affairs ("DVA") to challenge his seven-day suspension.  When Pathak appealed the district court's grant of summary judgment against him, the DVA raised the argument that Pathak's challenge was not subject to judicial review. The First Circuit agreed, noting that as a non-preference eligible member of the excepted service, Pathak was precluded from judicial review under the CSRA. Pathak, F.3d at 31("Fausto stands for the general proposition that judicial review is unavailable to a federal employee who has suffered an adverse personnel action if CSRA does not provide judicial review."). Moreover, because the CSRA did not provide Pathak with a right to judicial review, the First Circuit determined that "he cannot go around the CSRA and assert federal jurisdiction by relying upon the [APA]." Pathak, 274 F.3d at 32.

The First Circuit also noted in Pathak that it would not consider Pathak's claim of violation of due process because it concluded that his constitutional claim was "not even colorable," id. at 33; it suggested, however, "despite the CSRA's expansive reach, we might have jurisdiction to review a plaintiff's constitutional claims." Elgin v. Dept. of Treasury, 641 F.3d 6, 18 n.12 (1st Cir. 2011). That issue was subsequently settled in Elgin v. Dept't of Treasury, ----U.S.----, 132 S.Ct. 2126, 2133, 183 L.Ed.2d 1 (2012). In Elgin, the Supreme Court, affirming the First

15

Circuit's conclusion that the CSRA was the exclusive remedy for federal employees to challenge the constitutionality of their removal, Elgin, 641 F.3d at 11 ("[T]his circuit has been firm in treating the CSRA remedy as exclusive as to equitable constitutional claims"), held that "the CSRA precludes district court jurisdiction over petitioners' claims even though they are constitutional claims for equitable relief." Elgin v. Dept't of Treasury, 132 S.Ct. at 2133, 183 L.Ed.2d 1. It is noted, however, that the plaintiffs in Elgin belonged to the competitive service category whose constitutional claims could be "meaningfully addressed" in the Federal Circuit. Elgin, 132 S.Ct. at 2132.

In the instant case, it is undisputed that Arroyo-Planas, a former judicial employee at the Bankruptcy Court and the primary plaintiff in this case, belongs to the "non-preference excepted service" category. As a member of that category of federal employees, the CSRA provides to her no means for administrative or judicial review. Because the CSRA provides the exclusive means for review of adverse personnel actions even if the plaintiff raises constitutional claims, the deliberate exclusion from the protections of the CSRA precludes Arroyo-Planas from judicial review of her involuntary separation from service in the Bankrupcty Court. Accordingly, this Court has no jurisdiction over Arroyo-Planas's claims regarding the termination of her employment or her related due process claims.

16

B.    **The Bivens Claim**

Likewise, Arroyo-Planas is precluded by the CSRA from invoking jurisdiction of this Court under <u>Bivens</u>. Under the <u>Bivens</u> doctrine, plaintiffs have an opportunity to "'vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials *in their individual capacities*.'" <u>Chiang v. Skeirik</u>, 582 F.3d 238, 243 (1st Cir. 2009)(quoting <u>DeMayo v. Nugent</u>, 517 F.3d 11, 14 (1st Cir.2008) (emphasis added in <u>Chiang v. Skeirik</u>). <u>See also</u> <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 70, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."). <u>Bivens</u> actions have also been permitted under § 1331 for violations of the Due Process Clause of the Fifth Amendment, <u>Davis v. Passman</u>, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). As the Supreme Court noted in <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 421, 108 S. Ct. 2460, 2466-67, 101 L. Ed. 2d 370 (1988), "[i]n each of these cases, as in <u>Bivens</u> itself, the Court found that there were no special factors counseling hesitation in the absence of affirmative action by Congress, no explicit statutory prohibition against the relief sought, and no exclusive statutory alternative

remedy." Id. (citing Davis v. Passman, 442 U.S. at 246-247, 99 S.Ct. at 2277-2278 ; Carlson v. Green, 446 U.S. 14, 18-20, 100 S.Ct., 1468, 1471-1472 (1980).

The Supreme Court, in Bush v. Lucas, 462 U.S. 367, 381-90, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), refused to infer a Bivens remedy where the CSRA covered the underlying adverse employment action. Subsequently, the Court declined in Schweiker v. Chilicky, 487 U.S. 412, to create additional Bivens remedies "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." Schweiker v. Chilicky, 487 U.S. at 423, 108 S. Ct. at 2468.

Other Circuits have followed suit.  See e.g., Dotson v. Griesa, 398 F.3d 156, 165-171 (2d Cir. 2005) (holding that CRSA precluded excepted service employee from bringing Bivens action); Saul v. United States, 928 F.2d 829 (9th Cir.1991)(CSRA precluded Social Security Administration employee's Bivens claim); Lombardi v. Small Bus. Admin., 889 F.2d 959, 960 (10th Cir. 1989) (holding that because federal employee's claims were governed by the CSRA, Bivens claim was precluded by the Supreme Court's holdings in Bush, Fausto, and Schweiker); Lee v. Hughes, 145 F.3d 1272 (11th Cir. 1998)(holding that CSRA precluded probation officer from bringing Bivens claim to recover monetary damages for alleged constitutional violations).

Based on the foregoing, the Court concludes that, given the comprehensive statutory scheme of the CSRA, Arroyo-Planas, a non-preference member of the excepted service, is precluded from asserting a <u>Bivens</u> claim against the Defendants in connection with the termination of her employment, even though she was not entitled to administrative or judicial review under the CRSA.

## C.    The Equal Protection Claim

The CSRA "does not extinguish any right or remedy available to federal employees under federal discrimination laws. 5 U.S.C. §2302(d)[5], *see also* 42 U.S.C. §2000e-16(c)." <u>Grosdidier v. Chairman, Broadcasting Bd. of Governors</u>, 560 F.3d 495, 498 n. 2 (U.S.App.D.C. 2009) *cert. denied* <u>Grosdidier v. Chairman, Broadcasting Bd. of Governors</u>, 558 U.S. 989, 130 S.Ct. 488, 175 L.Ed.2d 345 (2009); <u>Wilson v. Harvey</u>, 156 Fed. Appx. 55, 57 n. 4 (10th Cir. 2005)(noting that "the CSRA does not preempt Title VII). <u>See</u> 5 U.S.C. § 2302(d)(1) ("This section shall not be construed to

---

[5]

5 U.S.C. §2302(d) provides, in pertinent part, the following:

(d) This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or applicant for employment in the civil service under--

(1) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin;

(2) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), prohibiting discrimination on the basis of age;...

extinguish or lessen ... any right or remedy available to any employee or applicant for employment in the civil service under ... section 717 of the Civil Rights Act of 1964 (42 U.S.C.2000e-16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin.").

Accordingly, the Court next considers Arroyo-Planas's unequal treatment claim. Although neither party has addressed the issue, the Court's independent review has revealed that, following Congress's enactment of the CSRA, federal courts were required to adopt Equal Employment Opportunity ("EEOC") plans "'in conformance with the national policy of providing equal employment opportunity to all persons regardless of their race, sex, color, national origin, religion, age ... or handicap.'" Dotson v. Griesa, 398 F.3d at 172 (quoting Rep. of the Jud. Conf. of the United States, Judiciary Equal Employment Opportunity Program—Model Equal Employment Opportunity Plan § 1 (1980, rev.1986)); Semper v. Gomez, 747 F.3d 229, 234-236 (3d Cir. 2014)(holding that CSRA precluded judicial employee from litigating constitutional claims for equitable and declaratory relief in a federal question action where the employee could pursue meaningful relief under the employing federal district court's EEOC plan).

The Court takes judicial notice that the United States District Court for the District of Puerto Rico has implemented a "Consolidated Equal Employment Opportunity and Employment Dispute

Resolution Plan,[6]" (the "EEOC Plan") which applies, *inter alia*, to the Office of the Clerk of the Bankruptcy Court. Under the EEOC Plan, a judicial employee who believes that he or she has been subjected to workplace discrimination, may initiate informal resolution procedures that include counseling and mediation. EEOC Plan at 12-15. If the employee is not satisfied by the outcome, he or she may submit a complaint to the court's Employment Dispute Resolution Coordinator, which is subject to review by the Chief Judge or a designated judicial officer of the court. EEOC Plan at 15-17.  The final decision is subject to review by the Judicial Council. EEOC Plan at 17.

There is no indication that Arroyo-Planas sought to avail herself of the resolution processes available under the EEOC Plan. According to the Complaint, Arroyo-Planas made an "informal request" to the Clerk of the Court to reconsider her separation; she also requested to be reinstated to a lower-grade position, or to have her termination made effective as of September 30, 2013. Complaint ¶¶35-37. In addition, Arroyo-Planas sent an e-mail to the HR Specialist as  to how she could appeal her termination. None of those facts support an inference that Arroyo-Planas complained of gender and/or age-discrimination; rather, that claim was first

---

[6]
A copy of the EEOC Plan is available at http://www.prd.uscourts.gov/sites/default/files/documents/ajax/EEOEDR20130612.pdf

asserted in her June 12, 2014 Complaint.

The question of whether a judicial employee who falls under the non-preference excepted service category can seek redress for alleged employment discrimination in the district court has not yet been addressed by the First Circuit. The decision by the United States Circuit Court of Appeals of the Second Circuit in Dotson v. Griesa, 398 F.3d 156 (2d Cir. 2005) suggests that an excepted service employee's right to sue on the basis of unequal treatment is foreclosed by the exclusivity of the CSRA, at least when that employee is afforded an alternative means of pursuing the claim. The plaintiff in Dotson, a former United States probation officer, brought suit for alleged race discrimination and denial of due process in connection with the termination of his employment. Dotson asserted, *inter alia*, claims for employment discrimination. In reviewing the district court's dismissal of Dotson's claims, the appellate court concluded that (1) the CSRA provided no administrative or judicial review rights to excepted service employees; (2) given the comprehensive remedial scheme established by the judiciary itself, judicial employees "may not sue in equity for reinstatement of employment, even when they present constitutional challenges to their termination;" and (3) as a judicial employee, Dotson's "right to seek review of and relief from any adverse employment action was defined by the administrative grievance plans of the court where he was employed."

22

Dotson v. Griesa, 398 F.3d at 180. The Second Circuit noted that Dotson had not availed himself of the administrative procedures available to him. Id. at 172 n. 9.

Similarly, the United States Court of Appeals of the Third Circuit concluded that the CSRA precluded an excepted service employee from bringing constitutional claims for equitable and declaratory relief "because he was a judicial employee who could pursue meaningful relief under a remedial plan" adopted by the court that employed him. Semper v. Gomez, 747 F.3d at 235. The plaintiff in Semper, after he was terminated from his position as a United States probation officer, brought an action in the Court of Federal Claims, alleging, *inter alia*, that he had been terminated without cause and without a pre-termination hearing in violation of the Due Process Clause of the Fifth Amendment.

After Semper's claims were dismissed for lack of jurisdiction, the dismissal was affirmed by the Federal Circuit on the ground that the CSRA foreclosed excepted service employees from seeking review of employment actions in the Court of Federal Claims. Semper, 694 F.3d at 92. The Federal Circuit declined to address the question whether Semper could pursue a due process claim in a district Court action. Semper, 694 F.3d at 96. Semper filed a new action in district court, claiming federal question jurisdiction. Semper's claims were again dismissed for lack of jurisdiction, in part, because the comprehensive scheme of the CSRA does not provide

23

the remedy of judicial review to excepted service employees. The Third Circuit agreed with that determination, concluding that the district court lacked jurisdiction over Semper's constitutional claims because the claims were precluded by the CSRA. Semper, 747 F.3d at 235.

In the instant case, because Arroyo-Planas did not avail herself of the existing administrative means to address her unequal treatment claim under the existing EEOC Plan, the Court is of the opinion that judicial review in this Court is foreclosed to her by the exclusivity of the CSRA. However, even if the Court were to assume that Arroyo-Planas could pursue a claim of unequal treatment in this Court, the facts asserted by Arroyo-Planas are insufficient to establish even a *prima facie* case of employment discrimination. As explained by the First Circuit, "an equal protection claim requires 'proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rosaura Bldg. Corp. v. Municipality of Mayaguyez, 778 F.3d 55, 68 (1st Cir. 2015)(quoting Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir.2013)).

In her Complaint, Arroyo-Planas alleges that she "has been intentionally discriminated [against] by unequal treatment due to

her gender and age." Complaint ¶82. In sole support of that contention, Arroyo-Planas asserts that a younger, male colleague,[7] whose position was also eliminated at the same time, was permitted to continue working until September 30, 2013. Complaint ¶22, 29, 71, 83, 85, 87. Arroyo-Planas further suggests that "as of July 15, 2013, she would have been eligible for Retirement with Benefits, but due to the strategically chosen date of effective termination of employment, [she] had lost that right." Complaint ¶ 28. According to Arroyo-Planas, (1) she "was hastily terminated from employment in order to impede her qualification for retirement benefits," Complaint ¶71; (2) the "preferential treatment of a male coworker [is] unexplainable", Complaint ¶ 85; (3) the Defendants had "no conceivable rational basis which might support the differentiated treatment given to Plaintiff due to her age and the immediacy of her 56th birthday," Complaint ¶88; and (4) the damage she suffered "would not have occurred if [she] had not been deprived of her rights to the equal protection of the laws." Complaint ¶93.

In sum, the only difference alleged between the Defendants' treatment of Arroyo-Planas and her younger, male colleague is that her male colleague was permitted to work an additional two and a

---

[7]

Although Arroyo-Planas alleges that her colleague was also classified as Grade CL-25, no further facts have been asserted to establish that he was "similarly situated."

half months while Arroyo-Planas's own employment was terminated effective July 5, 2013, ten days before her fifty-sixth birthday.

Notwithstanding Arroyo-Planas's insistence that such unequal treatment was based on impermissible considerations and resulted in damages, her claims lack any factual support. As a federal employee with more than ten years of employment, Arroyo-Planas qualified for retirement benefits in the form of an immediate annuity as soon as she reached her MRA at fifty-six years of age. The termination of her employment ten days before her fifty-sixth birthday had no effect on that qualification and she would have been eligible to receive her annuity payments from that day on. However, on the same day, July 15, 2013, Arroyo-Planas's entitlement to severance pay[8] for involuntary termination would have ceased at the time she became eligible for the annuity. 5 U.S.C. §5595 (a)(2)(iv). Had the Defendants made the termination of Arroyo-Planas's employment effective on or beyond July 15, 2013, she would not have received any severance pay, while her eligibility for retirement benefits

---

[8]

The basic severance pay to which Arroyo-Planas was entitled before she became eligible for her retirement annuity was approximately one week's basic pay for each of the first ten years of service, plus two week's basic pay for each subsequent year, enhanced by an "age adjustment allowance computed on the basis of 10 percent of the total basic severance allowance for each year by which the age of the recipient exceeds 40 years at the time of separation. 5 U.S.C. §5595(c)(2). In case of involuntary separation of a 56-year old employee, the total basic severance is multiplied by 2.6. Based on that formula, Arroyo-Planas received approximately one year's salary as her severance allowance.

remained unchanged. No such calculation applied to Arroyo-Planas's younger male colleague, who was not yet nearing the MRA.

In other words, the sole fact with which Arroyo-Planas seeks to support her equal protection claim is that she was denied her request to work an additional two and a half months like her male colleague. Had her request been granted, this would have deprived her of the opportunity to receive one year's severance pay without impacting her eligibility for retirement benefits. As such, Arroyo-Planas's claim fails to allege that she was treated less favorably than her younger, male colleague or that the difference in treatment between the two resulted in damages; instead, it appears that the timing of the termination afforded her the additional benefit of a severance payment, the entitlement to which would have been lost to her ten days later. Although Arroyo-Planas contends that she lost her retirement benefits "due to the strategically chosen date of effective termination of her employment," Complaint ¶ 28, that fact is both unsupported and erroneous. Arroyo-Planas's eligibility for retirement benefits on her fifty-sixth birthday was unimpeded by her earlier termination; it was her voluntary withdrawal of her retirement contributions after her separation that rendered her ineligible for those annuity payments that were based on the service period to which such contributions related.

On these facts, and in the absence of any other allegations supporting a claim of unequal treatment, the Court is of the

27

opinion that Arroyo-Planas has failed to establish a *prima facie* case sufficient to withstand the Defendants' motion to dismiss the Complaint.

**Conclusion**

For the reasons stated herein, the Defendants' motion to dismiss the Complaint is GRANTED.

SO ORDERED.


<u>/s/ Mary M. Lisi</u>

Mary M. Lisi
United States District Judge

September 22, 2015